JAMES H. MORRISON, Plaintiff in Error, *v.* J. A. M'DANIEL, et al., Administrators, &c., Defendant in Error.

The act of 20th of October, 1852, providing that all the property, real and personal, of a deceased person, which by law was exempt from execution, in his lifetime, shall go and descend to his widow and children, exempt from his debts, saves the property to the widow and children, as well against the claims of creditors whose debts were created before the passage of the act, as also against those created after, in cases where the father and husband dies after the date of the act.

IN error from the Probate Court of Chickasaw county.   Hon. J. L. Flanagan, judge.

A statement of the case, will be found in the brief of counsel for plaintiff in error.

*C. B. Baldwin*, for plaintiff in error.

One James H. Morrison died on the 24th October, 1852, seised of a single quarter of land. His estate was afterwards declared insolvent, the land remaining unsold. On the 20th October, 1852, the act exempting land from sale, *after* death of the debtor, was passed at its called session, 1852, p. 66. A petition was filed by creditors, whose debts were *contracted* prior to said act, to subject said land to the payment of their claims. The answer relies exclusively on the act above referred to, and admits the facts set forth in the petition. Petition dismissed, and appeal taken.

The act in question should not be so construed as to give it a retrospective operation. There is nothing in the language used, to prove that such was the will of the law maker, and the object of the law would be accomplished, by making it control only debts contracted *after* its passage. The question here raised, has been so fully and ably discussed by Chancellor Kent, in the case of *Dash* v. *Van Cleck*, 7 Johns. R. 502, 506, that more than a reference to that opinion is conceived unnecessary.

2. The law, as it existed at the time the debts were contracted, entered into and formed part of the contract. *Brown* v. *Kinzie et al.*, 1 How. (S. C.) 319. Thus, when the credit was extended to the debtor, two securities were offered:—first, if the debtor lived, the product of his labor was liable: second, if he died, then the land was subject. Can the latter security be taken away, without impairing the obligation of the contract? The point is expressly decided for us, in *Quackenbush* v. *Danks*, 1 Denio, 128, and in R. M. Charlt. (Geo.) 324, and the principle involved, in 3 How. (S. C.) 707; 1 Ib. 319.

3. It may be said that the act only affects the remedy, and not the right; but is it not the veriest play on words, to say that the right is not impaired, when the remedy is destroyed? The remedy cannot be so changed as to hinder or delay the right. *Bruce* v. *Schuyler*, 4 Gilm. 221.

4. It is not contended that the act of 1852 is unconstitutional, save as applied to debts contracted before its passage. The right of the state to control its own policy, is not questioned, when that policy is adopted before the creditor has parted with his property;

but, if *after* the debt has been contracted, on the faith that the law, as it then exists, will be enforced, the legislature can exempt 160 acres of land from sale, why can it not also release a section and twenty slaves? Thus releasing two-thirds of the population from all legal liability to comply with contracts made, on the faith of the very property thus exempted.

*Featherston, Orr,* and *J. F. Cushman,* for defendant in error.

Morrison, defendant's intestate, died seised and possessed of one quarter section of land, the only land owned by him. Plaintiffs seek to subject this quarter of land to sale for the payment of debts due them, and contracted by Morrison. We submit, the Probate Court properly dismissed the petition of plaintiffs, because, under the law of 1852, Call. Session Acts, page 66, this land being exempt from levy and sale, under laws existing at that time, descends to the widow and children of the said Morrison. He was living after the act of 1852 went into force; and from the most reasonable construction of the act, it was the design of the legislature, that it should take effect upon all contracts, either upon those then in existence, or upon those thereafter to be entered into. The first section, and particularly the latter clause of that section of the act, clearly indicates that it was the intention of the legislature to exempt one-quarter section of land from the debts of the husband previously contracted, and allow it to descend to the widow and children. What was the occasion and necessity of the law? What was the object of the legislature, and what remedy had they in view? Certainly, the protection of the widow and orphan; and there is better sense, and more humanity in protecting them, than in extending the protection to the male head of a family, about which there is no dispute. This quarter, at the time the debts were contracted, was exempt to Morrison, and all his personal property not liable to execution, descended to his widow, at his death. In view, then, of the different laws then in force, exempting property from sale, and at the death of the husband giving it to the widow and children, could it have been the intention of the legislature to exclude the widows and children of deceased insol-

vent debtors from the benefits of the act under consideration, until the liabilities of such debtors had been all discharged? Or was it designed that the benefits of this act should be enjoyed by those widows and children only, of deceased debtors, whose debts were contracted subsequent to the passage of the act? If such was the intention, instead of declaring that the act should "be in force from and after its passage," (3d section,) and that all property now exempt should descend to the widow and children, *free from the contracts* and liabilities of the husband, different language would have been employed.

Did the legislature have the power to pass the law? Why is it unconstitutional? How does it impair the obligation of the contracts made between these parties, and what vested right is disturbed? Does it appear from anything before us, that the land was thought of by plaintiffs when they extended credit to Morrison? If it were true that debts were contracted with the understanding that the land should be held as security for their payment, —if, in other words, a deed of trust or mortgage had been given, we grant that a legislative enactment contravening the provisions of such deed or mortgage, would be unconstitutional. Morrison's creditors could not have looked to the land during his life, for that was exempt; and the product of a man's labor, *when there has been no contract concerning it*, is rather too vague and indefinite a thing to be the basis for declaring an act of government unconstitutional.

We will suppose that the claims of plaintiffs were sealed instruments. Will it be contended that the legislature had not the power to reduce the limitation on such instruments, after they were executed, from seven years to any shorter space of time? 1 Cushm. 166. Yet the law, as it existed at the time the debt was contracted, gave the creditor seven years to make the money out of the "product of the labor of the debtor." By reducing the time, is the right affected, or only the remedy curtailed? And is it not merely the remedy of plaintiffs, which has been affected by the act of 1852? It goes no further than to modify "the action or means given by law, for the recovery of a right." 5 Jacobs, L. Dic. 462.

It is insisted by counsel, that two securities were offered—the pro-

duct of Morrison's labor if he lived, his land, if he died. This law affects the latter security. But suppose that Morrison had lived. The evidences of debt against him are sealed instruments; and suppose the legislature, instead of passing the exemption law, had reduced the limitation from seven to two years on sealed instruments. At the time the debt was contracted, the law, under counsel's argument forming a part of the contract, gave Morrison's creditors seven years to secure themselves, and therefore, such an act would be unconstitutional, because it would affect one of the securities, on the faith of which credit was given, in the same manner that the · law of 1852 affects the other security.

FISHER, J., delivered the opinion of the court.

This was a petition filed in the Probate Court of Chickasaw county, by the creditors of the estate of one James H. Morrison, deceased, alleging the insufficiency of the personal estate to pay the debts of the deceased, and praying that a certain quarter section of land, of which the intestate died seised, might be decreed to be sold for the purpose of paying said debts.

The answer sets up as a defence, that by the statute of the 20th of October, 1852, the said quarter section of land, (being all the land which the intestate owned,) belongs to the widow and children of the deceased, and is not, therefore, liable to the payment of the petitioner's debts. The court below decreed in favor of the position taken by the answer, and dismissed the petition, from which the present appeal has been prosecuted.

By the statute of the 22d of January, 1841, every *free white citizen* of this state, male or female, being the head of a family, is entitled to own and hold, free and exempt from sale by virtue of any judgment, order or decree of any court of law or equity, founded on any contract made after the passage of said act, one hundred and sixty acres of land. Laws of 1841, p. 113.

The first section of the act of the 20th of October, 1852, provides as follows: " That hereafter, all property, real, personal, or mixed, at present exempt from execution, by virtue of any laws now in force, upon the death of the husband, dying intestate, shall descend in like manner as other property descends, according to

the laws now in force, to the widow and children during widow-hood, and afterwards to all the children alike, free from all con-tracts and liabilities of said decedent, or his widow, during her life :" p. 66.

It appears that the husband died on the 24th of October, 1852, four days after the passage of the law.

The counsel for the appellants insists that this law must apply only to those cases, where the debts have been contracted since the 20th of October, 1852, by the husband, and that to hold other-wise, would be giving to the act a retrospective operation. We disagree with counsel in this view of the law. It is only neces-sary that the person claiming the benefit of it, should have become a widow since its passage. The debts contracted could not, during the lifetime of the debtor, have been enforced against the land; and it cannot be even plausibly argued, that the law in the least impairs the obligation of the contract, for the obvious reason, that the land was never looked to, as the source from which payment could be either received or coerced.

Decree affirmed.